UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

AMW Machine Control, Inc.                              Case No. 16-02157-jtg
                                                       Chapter 11 Proceeding
      Debtor                                     Hon. John T. Gregg

_____/

**MOTION OF THE DEBTOR PURSUANT TO BANKRUPTCY RULE 9019(a) AND BANKRUPTCY CODE §§ 105, 363 and 364 FOR ENTRY OF AN ORDER FOR APPROVAL OF SETTLEMENT AGREEMENTS AND RELEASES, SECURITY AGREEMENT, SOFTWARE ESCROW AGREEMENT AND TECHNOLOGY LICENSING AGREEMENT AMONG THE DEBTOR AND GEOLOGIC COMPUTER SYSTEMS, INC., ALAN WILLIAMS, MARK WILLIAMS, AMW MACHINE GROUP, LLC, ADVANCED GEO POSITIONING SOLUTIONS, INC, AND PULSAR MECHATRONICS, INC.**

AMW Machine Control, Inc. ("**Debtor**") by and through its counsel Keller & Almassian, PLC, hereby files this Motion (the"**Motion**") pursuant to Bankruptcy Rules 9019, 6004 and 4001 and Bankruptcy Code §§ 105(a), 363 and 364, for entry of an Order for approval of GeoLogic Settlement Agreement and Release and all exhibits to that Agreement including, without limitation, the Security Agreement and Software Escrow Agreement which are attached as a part of (**Exhibit I**) AGPS Settlement Agreement and Release (**Exhibit II**), and AMW Machine Control, Inc. Technology Licensing Agreement (**Exhibit III**) (Collectively "**Settlement Documents**") by and among the Debtor, GeoLogic Computer Systems, Inc. ("**GeoLogic**"), Alan Williams ("**Alan**"), Mark Williams ("**Mark**"), Advanced Geo Positioning Solutions, Inc. ("**AGPS**"), and Pulsar Mechatronics, Inc. ("**Pulsar**"), (the **"Parties"**), which Settlement Documents provide, among other things, for the resolution of the disputed software and copyright infringement lawsuit entitled *GeoLogic Computer Systems, Inc. v. John D. Maclean, et al.* Case No. 2:10-cv-13569-AJT-RSW (the "**Litigation**") and release of all related claims against the Debtor, thereby reducing the total filed unsecured general claims by over 90%.

1

In support of the relief requested in the Motion, the Debtor respectfully represents as follows:

### Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 363and 364 and Bankruptcy Rules 9019, 6004 and 4001.

### Introduction

2. On April 19, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtor continues to manage its assets and operate its business as Debtor-in Possession pursuant to Bankruptcy Code §§ 1107 and 1108. No Trustee or examiner has been appointed.

4. No official committee of unsecured creditors was appointed pursuant to Bankruptcy Code § 1102 (a)(1).

5. Debtor is a small business debtor pursuant to 11 U.S.C.§ 101(51D).

6. Debtor is required to file the plan and a disclosure statement not later than 300 days after the date of the order for relief in accordance with 11 U.S.C. § 1121(e)(2) which is February 13, 2017.

7. The opportunity for timely approval of this Motion is important in order to provide an accurate and complete Disclosure Statement and Plan.

**United States District Court for the Eastern District
of Michigan Procedural History**

8. The Debtor filed for relief under Chapter 11 of the Bankruptcy Code to address, in part, the lawsuit filed by GeoLogic against the Debtor in the United States District Court for the Eastern District of Michigan. The lawsuit was filed in 2010.

9. In 2010 GeoLogic brought a lawsuit against various defendants including Debtor, asserting claims such as copyright infringement.

10. The lawsuit was entitled *GeoLogic Computer Systems, Inc. v. John D. Maclean, et al.* Case No. 2:10-cv-13569-AJT-RSW (the "**Litigation**").

11. The following parties were defendants in the lawsuit:

   a) John D. Maclean
   b) Product Support International, Inc.
   c) Ronald D. Clark
   d) Mike S. Pinkstaff
   e) Xyz Corporation
   f) City of Dubuque
   g) AMW Machine Control, Inc.
   h) AMW Group, LLC
   i) Advanced Geo Positioning Solutions, Inc.
   j) Thomas Bower
   k) Mike Cook
   l) Nate Cook
   m) Rick Marsh
   n) Perry Rust
   o) Mark Williams
   p) Alan Williams

12. In the Litigation, Defendants denied GeoLogic's claims and asserted various affirmative defenses, and a counterclaim of copyright invalidity against GeoLogic.

13. On October 4, 2013, at a settlement conference, the Parties and other Defendants reached a settlement agreement that was placed on the record, including a non-competition agreement for certain defendants ("**Non-Compete Defendants**"). The Court gave the Parties

thirty (30) days to reduce the agreement to writing. The Parties failed to reduce the settlement agreement to writing, because a dispute arose with respect to the non-competition agreement for the Non-Compete Defendants.

14. On April 14, 2014, the Plaintiff and the Non Compete Defendants, acting without the knowledge of the remaining defendants, executed a separate settlement agreement that did not include the aforementioned non-compete provisions ("**April 14th Amendment**").

15. Plaintiff subsequently moved to have the District Court impose the terms of the April 14th Agreement on the remaining defendants. On December 10, 2014, the District Court issued an Opinion and Order, denying Plaintiff's motion because the Court found that the remaining defendants had not agreed to the April 14th Amendment that the Plaintiff sought to enforce.

16. The lawsuit continued on through April of 2016 at which time Debtor filed its Chapter 11 petition.

## United States District Court for the Western District Bankruptcy Procedural History

17. Despite the pending bankruptcy proceeding, all parties, including the Debtor agreed that the Litigation should continue in the Eastern District of Michigan.

18. Therefore, on September 15, 2016 the following Motions were filed: *Motion of GeoLogic Computer Systems, Inc. For: Relief From the Automatic Stay Under 11 USC § 362(d)(1) to Complete Pending Litigation Against the Debtors; and/or (II) For a Determination That the Automatic Stay is Not Applicable to the Portion of the Pending Litigation Relating to the Request for Injunctive Relief Against Debtor* [DN 60], and *Motion of GeoLogic Computer Systems, Inc. For the Bankruptcy Court to Abstain Pursuant to 28 USC § 1334(c)(1)*[DN 61].

19. The Debtor filed a *Concurrence to the Motion of GeoLogic Computer Systems, Inc. For: Relief From the Automatic Stay Under 11 USC § 362(d)(1) to Complete Pending Litigation Against the Debtors; and/or (II) For a Determination That the Automatic Stay is Not Applicable to the Portion of the Pending Litigation Relating to the Request for Injunctive Relief Against Debtor* [DN 72], and a *Concurrence to theMotion of GeoLogic Computer Systems, Inc. For the Bankruptcy Court to Abstain Pursuant to 28 USC § 1334(c)(1)*[DN 74] on September 29, 2016.

20. The Bankruptcy Court entered an *Order Granting GeoLogic Computer Systems, Inc. Motion for Relief From the Automatic Stay Under 11 USC § 362(d)(1) to Complete Pending Litigation Against the Debtor* [DN 81] and an *Order Granting GeoLogic Computer Systems, Inc.Motion for the Bankruptcy Court to Abstain Pursuant to 28 USC § 1334(c)(1)* [DN 82] on October 3, 2016.

21. The matter proceeded in the United States District Court for the Eastern District of Michigan.

22. An Order for Permanent Injunction was Stipulated to between GeoLogic and the Debtor and entered in the Eastern District Court Litigation on November 22, 2016 (See **Exhibit IV**). That Order precludes Debtor from selling or licensing the software which is the subject of the Settlement Documents.

23. On December 19, 2016 the Parties met to explore a final global settlement agreement.

24. Negotiations continued throughout December 2016 and January 2017, and drafts of the Settlement Documentswere circulated among the parties.

25. Recently, the parties entered into the GeoLogic Settlement Agreement and Release, a Stock Assignment, a Security Agreement, Software Escrow Agreement (**Exhibit I**), the AGPS Settlement Agreement and Release (**Exhibit II**), and the AMW Machine Control, Inc. Technology Licensing Agreement (**Exhibit III**). The effectiveness of the Settlement Documents is contingent upon approval by the Bankruptcy Court.

26. Upon the approval of the Bankruptcy Court of the Settlement Documents, the Settlement Documents shall resolve all disputes between all parties to the Settlement Documents. The Litigation will be dismissed with prejudice, without costs, and there will be no residual litigation between the parties.[1]

## Summary of Documents and Exhibits

27. The Eastern District Court Litigation involves many parties, complicated contract and copyright issues, and is proposed to be resolved through the Settlement Documents referenced in this motion.

28. The Settlement Documents and Exhibits attached to the Settlement Documents are listed below with a summary of their purposes.

    a) <u>GeoLogic Settlement and Release Agreement</u> (**Exhibit I**)

        The Agreement was principally negotiated between the Debtor and GeoLogic. Other parties are included in this Agreement mainly to dispense with all potential claims of ownership to the licensed software formally in dispute. GeoLogic will obtain a security interest in the licensed software as security for the payments to be made by Pulsar. A Default allows GeoLogic to reinstate the Injunction and foreclose on its security interest. The GeoLogic

---

[1] GeoLogic will be entitled to reopen the Litigation and reinstate the injunction if the payments under the settlement agreement are not made.

Settlement Agreement and Release includes the following additional documents:

i) Stock Assignment Separate From Certificate (**Exhibit A**)
ii) Stipulated Order Conditionally Staying Injunction Dated November 22, 2016 (**Exhibit B**)
iii) Stipulated Order Reinstating Injunction Dated November 22, 2016 (**Exhibit C**)
iv) Security Agreement (**Exhibit D**)
v) Software Escrow Agreement (**Exhibit E**)
vi) Stipulated Order of Dismissal (**Exhibit F**)

b) <u>AGPS Settlement Agreement and Release</u> (**Exhibit II**)

AGPS has claimed an ownership interest in the disputed software. AGPS filed a claim for $4,000,000. This document settles the dispute between the parties, provides for a mutual release, and requires AGPS to withdraw its $4,000,000 claim. The principal owners of the Debtor, Mark and Alan Williams, are minority owners of AGPS. Mark and Alan Williams are assigning their stock in AGPS to the general treasury of AGPS. This is a good resolution for the Debtor which has no ownership interest in AGPS and disputes owing any amount to AGPS. This settlement agreement will allow the Debtor to avoid objecting to the AGPS claim and the anticipated litigation associated with such an objection. AGPS is receiving no funds from the Settlement Documents or the proposed Chapter 11 Plan to be filed. Currently, there is no agreement to allow AGPS to use the Debtor's software. It is possible for AGPS to negotiate licensing terms similar to Pulsar and the same obligation to pay GeoLogic pursuant to the terms of the GeoLogic Settlement Agreement and Release, if a Technology Licensing Agreement is mutually

acceptable to the parties. If such an agreement is reached AGPS is required to make payments which will reduce the $2,000,000 owed to GeoLogic.

c) <u>AMW Machine Control, Inc. Technology Licensing Agreement</u> (**Exhibit III**)

This document is neither a compromise nor a settlement, however, it is the document funding the GeoLogic Settlement Agreement and Release. It is within the Debtor's normal business operations to grant nonexclusive rights to its licensed software, but Debtor is seeking approval of the Technology Licensing Agreement pursuant to Bankruptcy Code Section 363. Essentially, GeoLogic claims ownership of the software and absent this settlement, Debtor is prohibited from selling or licensing the software. Pulsar has been a known and respected business by the Debtor. Pulsar is a Canadian Company with a similar size and business model as the Debtor. Pulsar agrees to pay GeoLogic $2,000,000 to release GeoLogic's claim in the software and Debtor, in turn, will grant Pulsar a right to use the software. GeoLogic will be granted a security interest in the software to secure the obligation to pay $2,000,000 to GeoLogic. That Security Interest will continue until final payment to GeoLogic is made. The GeoLogic Settlement and Release Agreement provides Debtor and Pulsar shall make the payments to GeoLogic. However, the AMW Machine Control, Inc. Technology Licensing Agreement requires, as between Debtor and Pulsar, that Pulsar is to make all payments exclusively. In other words, the Debtor is not required to pay GeoLogic as part of the Settlement Documents. Nevertheless, a failure to pay GeoLogic will result in a default under the Security Agreement giving GeoLogic the right to foreclose

    its security interest and take other enforcement action described therein. A collateral benefit is GeoLogic withdrawing its claim.

  d) <u>Declaration of CEO Mark A. Williams</u> (**Exhibit IV**)

    Debtor's principal officer has owned and operated Debtor from its inception. Mr. Williams supports the terms of the Settlement Documents.

  e) <u>Declaration of CEO Cory D. Jantzi</u> (**Exhibit V**).

To be clear, this Motion seeks approval of all the Settlement Documents.

## Summary of the Major Terms of the Settlement Agreements and Releases (Exhibit I and II)[2]

29. Debtor's most significant asset is its proprietary software which allows using satellite technology to provide land measurements critical to the agricultural and construction industries.

30. Prior to filing its Bankruptcy Petition, Debtor generated up to 70% of its revenue from its software in the agricultural and construction industry.

31. The Settlement Documents resolve any issues related to the six year litigation regarding contract and copyright infringement, the parties disputed claim of ownership of certain software, resolves all claims, counterclaims, defenses, causes of action, grievances, and disputes which have been or could have been asserted, and dismisses the litigation with prejudice. The Settlement Documents also create rights for the parties other than Debtor.

32. Significantly, the Settlement Documents eliminate approximately $7,653,275 in general unsecured claims, leaving approximately 9% of the general unsecured claims remaining.

33. The Settlement Documents promise that GeoLogic will receive $2,000,000 from Pulsar, a third party and possibly others in connection with GeoLogic's claimed ownership and

---

[2] The descriptions of the Settlement Documents are intended as a summary. Any inconsistencies between this summary and the Settlement Agreements and Releases and Technology Licensing Agreement shall be governed by the Exhibits.

9

copyright rights in the software program "AMW Works" and create a security interest in certain of Debtor's assets, including the software, to secure those rights.

### AMW Machine Control, Inc. Technology Licensing Agreement Product Support International, Inc.

34. The third party, Pulsar Mechatronics, Inc., desires to obtain from Debtor a non-exclusive, worldwide, perpetual right and license to the Licensed Software as stated in the GeoLogic Settlement Agreement and Release and in accordance with the terms of the GeoLogic Settlement Agreement and Release, in exchange for a global settlement in the litigation.

35. Pulsar desires a nonexclusive, worldwide, perpetual, right, and license to the Licensed Software. GeoLogic, AGPS, and Debtor each make claims to the copyright ownership.

36. As a result of GeoLogic and AGPS giving up their ownership claims in the software[3] to Debtor, Debtor will enter into a non exclusive licensing agreement with Pulsar. Pulsar, a Canadian Company with Canadian contacts and customers will sell to a market which Debtor does not occupy, although some overlap is expected. This will also allow Pulsar to pay GeoLogic $2,000,000 over time.

37. Additionally, prior to April 1, 2016 Pulsar shall pre-purchase 300 hours of software programming services from Debtor in the amount of $30,000. Debtor will use the proceeds exclusively for the purpose of Chapter 11 Plan funding. It is Debtor's intent that those funds will be deposited pursuant to Bankruptcy Rule 3020(a) in an account for purposes of Confirmation. This amount may change prior to Confirmation.

### Relief Requested

38. Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. §§ 363 and 364, the Debtor requests that this Court approve the Settlement Documents, including the Technology Licensing

---

[3] GeoLogic's ownership claims will not be given up until final payment is made under the settlement agreement, but the settlement agreement does permit Debtor to make sales once the Settlement Documents are approved.

10

Agreement, as being in the best interests of the Debtor and its estate. The relief requested herein is authorized by Bankruptcy Rule 9019, which provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement" and 363 which authorizes the Court to approve the technology licensing transaction and 363 and 364 which authorizes the Court to approve the grant to GeoLogic of a security interest in assets claimed by the Debtor.

### Basis for Relief

39. Debtor cannot afford to continue litigating and there is no certain outcome in the Eastern District Court.

40. Pulsar is paying GeoLogic to give up its claim of ownership regarding the software for $2,000,000, which shall be paid to GeoLogic. GeoLogic's withdrawal of its proof of claim is a collateral benefit.

41. This will eventually provide Debtor with complete ownership of the licensed software subject to the security interest in favor of GeoLogic and the ability to sell without payment to GeoLogic.

42. It is an additional benefit that the GeoLogic Settlement Agreement and Release resolves GeoLogic's claim in the amount of $3,653,275 and the claim will be withdrawn. The Debtor is not obligated to make any payment to GeoLogic as a result of the Settlement Documents or any forthcoming Chapter 11 Plan.

43. The AGPS Settlement Agreement and Release resolves AGPS's claim in the amount of $4,000,000 and the claim will be withdrawn. The Debtor is not obligated to make any payment to AGPS as a result of the Settlement Documents or any forthcoming Chapter 11 Plan.

44. The claims to be withdrawn as part of the Settlement Documents resolve approximately 90% of the general unsecured claims.

45. Unless Debtor is allowed to use the source code and dissolve the permanent injunction, Debtor's operations would cease in the near immediate future.

46. Additionally, with these claims resolved, Debtor anticipates it can obtain a confirmable chapter 11 plan which will provide a distribution to unsecured creditors. The remaining creditors include limited amounts owed to employees in leadership positions within the Debtor's company, former attorneys, expert witnesses, and a deminimus amounts owed to vendors.

47. The Debtor has a Valid Business Justification for entering into the Settlement Documents with GeoLogic, AGPS, and Pulsar.

48. The United States Supreme Court has held that "[c]ompromises are a normal part of the process of reorganization. In administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *Protective Comm.for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968). Further, as explained by the United States Court of Appeals for the Sixth Circuit, the role of the bankruptcy courts in settlements is as follows:

> In bankruptcy proceedings, as distinguished from ordinary civil cases, any compromise between the debtor and his creditors must be approved by the court as fair and equitable. In considering a proposed compromise, the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable.

Reynolds v. C.I.R., 861 F.2d 469, 473 (6th Cir. 1988) (citations omitted).

49. Although the bankruptcy court should not act as a mere rubber stamp, it also should not conduct a "mini-trial on the merits of the settlement." *In re Dow Corning Corp.,* 192 B.R. 415, 421 (Bankr. E.D. Mich. 1996) (quoting *In re Drexel Burnham Lambert,* 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991)). Rather, the court's obligation is to "canvas the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" DowCorning, 192 B.R. at 421. Six years of litigation and two previous Settlement Agreements have been entered without final conclusion to the matter. It is Debtor's opinion that it has a valid business justification for accepting the terms agreed upon in the Settlement Agreement and Release.

50. Any factor "relevant to a full and fair assessment of the wisdom of [a] proposed compromise" should be considered by the bankruptcy court. Protective Comm*.,* 390 U.S. at 424. The Court in Dow Corning delineated the following specific factors as among those a court should consider when determining whether a proposed settlement is "fair and equitable":

> a) The balance between the likelihood of the plaintiff's or defendant's success should the case go to trial compared to the present and future benefits offered by the settlement;
>
> b) The prospect of complex, costly, and protracted litigation if settlement is not approved;
>
> c) The competency and experience of counsel who supports the settlement; and
>
> d) The extent to which the settlement is the product of arm's-length bargaining.

Dow Corning, 192 B.R. at 421-22.

51. When deciding whether to approve a compromise, a court will normally accept the judgment of a trustee or debtor-in-possession as long as a legitimate business justification exists. *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 250 (D. Del. 1998). The decision to enter into a settlement is left to the trustee's or debtor's business judgment. See *In re Penn*

*Central Transportation Co.,* 347 F. Supp. 1351, 1353 (E.D. Penn. 1972) (settlement agreement approved because it reflected exercise of business judgment). Once a debtor has articulated a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.,* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting Smith v. Van Gorkam, 488 A.2d 858, 872 (Del. 1985)); see also *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

52. Section 363(b)(1) of the Bankruptcy Code governs the Debtor's request and provides "that the Trustee, after notice and a hearing, may…sell…other than in the ordinary course of business, property of the estate." 11 U.S.C.363(b)(1). Sections 363 and 364 of the Bankruptcy Code authorizes the grant of a security interest in assets of the Debtor.

53. The requirements as outlined in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir.N.Y. 1983) and *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6[th]Cir.Ky.1986) hold that a bankruptcy court can authorize a sale of assets outside of the ordinary course of businesses pursuant to 11 U.S.C. 363(b)(1) only when a "sound business purposes dictates such action." Id., at 390.

54. The Debtor's Chief Executive Officer supports the terms of the Settlement Documents and believes the arrangement is fair and reasonable under the circumstances, believes this is the highest and best possible settlement and is ultimately in the best interest of the estate to the extent Debtor will own 100% of the disputed software, will continue operations, allows for the withdrawal of approximately 90% of general unsecured claims, allows for the timely filing of

55. The Settlement Documents, which are the product of time consuming negotiations between adverse parties, substantial good faith and arm's length bargaining among the Parties, represents a compromise that is reasonable, beneficial to the Debtor's estate, and in the best interests of the Debtor's creditors.

56. The approval of the Settlement Documents will resolve any present disputes among the Debtor, GeoLogic, and AGPS and is supported by these parties.

57. The Settlement Documents would also enable the Debtor to avoid the potential costs and uncertainty of having to continue the Litigation. Proceeding without approval of the Settlement Documents could result in needless delay and expense in this case.

58. In sum, the compromise represented in the Settlement Documents, including the Security Agreement, Software Escrow Agreement and Technology Licensing Agreement should be approved because it clearly represents a prudent exercise of the Debtor's business judgment and is in the best interests of its estate and creditors.

59. The Settlement Documents, if approved, will save this case and set the table for Debtor to propose and execute a confirmable Plan, with $30,000 likely available at Confirmation, and the possibility for a distribution to the remaining creditors who will benefit from the withdrawal of 90% of the unsecured claims, Debtor strongly supports approval of the Settlement Documents.

60. The Plan of Reorganization to be filed by Debtor will be consistent with the terms of the Settlement Documents and will not in any way interfere with the transactions described in or rights created by the Settlement Documents. The Order granting the Motion should provide

...

that the Technology Licensing Agreement may not be rejected by the Debtor and that the prohibition against rejection will be binding on any subsequent trustee.

## Notice

61. In accordance with this Court's order approving shortened notice, notice of this Motion has been given via e-mail or first class United States mail, as appropriate, upon the Matrix.

## No Prior Application

62. No previous request for the relief sought in this Motion has been made to this or any other court.

## Conclusion

WHEREFORE, The Debtor respectfully requests that this Court approve the Settlement Documents substantially in the form attached hereto as **Exhibits I, II, and III**, and grant any additional relief that the Court may deem just and proper.

                                  Respectfully Submitted,

                                  KELLER & ALMASSIAN, PLC,
                                  *Counsel to the Debtor*

Date:  1/24/17                        /s/ A. Todd Almassian
                                          A. Todd Almassian (P55467)
                                          230 East Fulton St.
                                          Grand Rapids, MI 49503
                                          (616) 364-2100
                                          ecf@kalawgr.com