UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

AMW Machine Control, Inc.  Case No. 16-02157-jtg
  Chapter 11 Proceeding
    Debtor  Hon. John T. Gregg

_____/

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF SECOND PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

### Introduction

The above-captioned chapter 11 debtor and debtor-in-possession herein (the "Debtor"), respectfully submits this Memorandum of Law in support of confirmation of its Second Plan of Reorganization under Chapter 11 of the Bankruptcy Code dated April 12, 2017, as the same may be further amended or modified (the "Plan").

As this Memorandum of Law demonstrates, and as the Debtor will further prove if necessary at the hearing on confirmation of the Plan to be held on Tuesday, May 23, 2017 at 1:00 p.m., the requirements for confirmation of a plan of reorganization set forth in section 1129 of title 11 of the United States Code (the "Bankruptcy Code" or "Code") have been met, and this Court should confirm the Plan.

The Plan represents efforts by the Debtor to reach a fair, equitable and expeditious resolution of the business and legal issues presented by its chapter 11 bankruptcy case.

AMW Machine Control, Inc. (hereinafter "AMW") was established in 2010 by Mark A. Williams and Alan R. Williams, shareholders, and began as software support for the construction industry, launching the Williams' first software in 1988. AMW utilizes global positioning system (GPS) and machine control technology to develop software applications used most widely in the agricultural and road building communities. AMW offers accurate machine control for nearly anything that digs, grades, or paves. AMW has been developing 3D machine control systems, leading the way with total station technology, GPS, and, RTK GPS. Only AMW software uses Vertical Control calculations to provide actual curved grades rather than a series of

planes, making it easier than ever to design and execute plans.  The same technology supported anyone to whom contours and planes were important–from those preparing sites for construction to those looking to get standing water off a field.  AMW software is specifically developed to support construction, agriculture, and waste management.

In acting to restructure its business and particularly to address the primary cause of its financial difficulties – the 6 year lawsuit with Geologic – the Debtor does not minimize the costs to other businesses associated with the results of this Chapter 11 Bankruptcy.

Agriculture

Agricultural tile plows were first equipped with AMW software in 1997.  Surface contours matter in agriculture, because drainage and water movement are critical. AMW Machine Control makes software that uses the most sophisticated GPS data, yet is user-friendly enough for those who don't make data their full-time job.

AMW software supports design of pads, level fields, drainage, and water retention, using Vertical Curve technologies for gradual grade changes rather than multiple planes produced by laser systems. The result is accuracy within tight tolerances, and land management in agricultural applications that pays dividends in productivity. The capabilities of the software make it valuable in other applications as well, and AMW offers services for custom applications.

Construction

In the construction world, AMW's GPS-based software is available for construction site preparation and specifically for highway construction. The software offers machine guidance or control for dozers, graders, excavators, curb machines, pavers, trenchers, trimmers, and milling machines.

The software supports heavy equipment operators with accurate surface grading and excavation, as well as with site preparation for construction, roads, or parking lots. The software starts with design and mapping; enables grade checking and surface design via ATVs and pickup trucks; and can be upgraded for heavy-equipment machine indication and control.

Putting real-time information in the cab with equipment operators means faster, more accurate results, with better placement and greater compaction. AMW software provides automatic volume and area calculations.

AMW has distributors in North America, Australia, and Africa, with its headquarters located at Saranac, Michigan. It employs 3 people ("Employees"), providing services nationwide. Income is primarily through the sale of software licenses sold through a dealership network.

The Debtor recognizes their obligations under the Bankruptcy Code to demonstrate - by a preponderance of evidence - that the Plan satisfies all requirements of Code section 1129. As demonstrated herein, and as will be shown at the Confirmation Hearing if required, the Plan satisfies all applicable requirements of the Bankruptcy Code and should be confirmed.

The case was filed as a result of ongoing litigation. Debtor has negotiated the resolution of all litigation and substantially eliminated two of the largest unsecured claims.

## Legal Argument

I.  **THE PLAN MEETS EACH REQUIREMENT FOR CONFIRMATION UNDER BANKRUPTCY CODE SECTION 1129(a)**

The Court must confirm a chapter 11 plan of reorganization under section 1129(a) of the Bankruptcy Code if the requirements of its thirteen (13) subsections are met. As set forth below, the Plan meets each of these requirements except for section 1129(a)(8) of the Bankruptcy Code.

   A.  The Plan Complies With Applicable Provisions of the Bankruptcy Code - Section 1129(a)(1)

      1.  The Plan's Classification of Claims Is Proper - Sections 1123(a)(1) and 1122

Section 1129(a)(1) of the Bankruptcy Code requires that a plan of reorganization comply with the "applicable provisions" of the Bankruptcy Code. While the section covers a broad scope, the legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision embodies and incorporates the requirements of sections 1122 and 1123 governing the classification of claims and the required contents of a plan.

Even where a plan does not strictly comply with all of the requirements of title 11, it may be confirmed if the violations are insubstantial. See Kane v. Johns-Manville Corp., 843 F.2d 636, 648 (2d Cir. 1988) (affirming confirmation of plan where violations of voting provisions

3

constituted harmless error). As demonstrated below, the Plan complies fully with the requirements of both of these Code sections.

Section 1123(a)(1) of the Bankruptcy Code requires that a plan classify all claims, with the exception of certain priority claims, and that such classification complies with section 1122. See 11 U.S.C. § 1123(a)(1). Section 1122 requires that each claim within a class be substantially similar to all other claims within that class. See 11 U.S.C. § 1122(a). The Plan meets these requirements.

### a. The Plan Classifies All Claims And Equity Interests

The Plan designates 5 classes of Claims and Equity Interests. The classes entitled to vote are as follows:

Class Status

Class 2 – The Williams Family Trust Lender Secured Claim.

Class 3 – Unsecured Claims include claims listed on Schedule D for which there is not sufficient equity in the collateral subject to the lien, known claims on Schedule E and F, and timely filed and allowed Unsecured Claims.

All Claims and Equity Interests in and against each Debtor, except for Administrative Expense Claims, have been classified as required by Code section 1123(a)(1).

### b. The Plan's Classification Scheme Is Reasonable and All Claims Within a Class Are Substantially Similar

Section 1122 of the Bankruptcy Code requires that all claims within each class be substantially similar. See 11 U.S.C. § 1122. It is generally accepted that the phrase "substantially similar" means "similar in legal character or effect as a claim against the debtor's assets or as an interest in the debtor." 5 Collier on Bankruptcy, § 1122.03[1][b], at pp. 1122-8 (15th ed. 1995), the Debtors' Plan satisfies this standard.

The Plan's classification of secured and general unsecured claims into separate classes is also proper. Class 2 consists of The Secured Claim of the Williams Family Trust. Class 3 consists of General Unsecured Claims.

Accordingly, the classification scheme established under the Debtors' Plan is reasonable based upon the differences in the nature and priority of the claims asserted against the Debtor, and all claims within a class are substantially similar, thereby satisfying the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code. No creditor or party in interest objected to the Plan's classification structure.

### 2. The Plan Specifies Unimpaired Classes - Section 1123(a)(2).

Section 1123(a)(2) of the Bankruptcy Code, made applicable by section 1129(a)(1), requires that the Plan specify the treatment of any class of claims or interests that is not impaired under the Plan. See 11 U.S.C. § 1123(a)(2). Impairment refers to the alteration of legal, equitable or contractual rights of holders of claims or interests. See 11 U.S.C. § 1124.

The Plan specifies that Administrative Expense Claims and Priority Tax Claims (which are not classified), are not impaired under the Plan. Thus, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Administrative expense claimants have agreed to accept payment for Debtor over time as feasible. The priority wage claim for William Homrich is allowed and Mr. Homrich has agreed to accept payments over 42 months on his wage claim of $12,850.

### 3. The Plan Specifies the Treatment of Impaired Classes - Section 1123(a)(3)

Section 1123(a)(3) of the Bankruptcy Code, made applicable by section 1129(a)(1), requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan." See 11 U.S.C. § 1123(a)(3). Courts have recognized that even the slightest alteration to a creditor's rights constitutes as impairment under section 1124 of the Bankruptcy Code. In the instant matter, the Debtors have altered the contractual rights of the secured creditor and those unsecured creditors.

### 4. The Plan Provides Equal Treatment Within Classes - Section 1123(a)(4).

5

Section 1123(a)(4) of the Bankruptcy Code, made applicable by section 1129(a)(1), requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." See 11 U.S.C. § 1123(a)(4). The Plan satisfies this requirement since no creditor within a class is treated differently from any other creditor and no one has alleged otherwise.

5. The Plan Provides Adequate Means for Its Implementation - Section 1123(a)(5).

Section 1123(a)(5) of the Bankruptcy Code, made applicable by section 1129(a)(1), requires that the Plan provide "adequate means" for its implementation and lists certain possible examples, such as sales of the debtor's property, cancellation or modification of any indenture, extension of a maturity date or change in interest rate or other term of outstanding securities, amendment of the debtor's charter, and the issuance of new securities. See 11 U.S.C. § 1123(a)(5).

In accordance with the requirements of section 1123(a)(5) of the Bankruptcy Code, Mark Williams and Alan Williams are going to work diligently to make the business a success. The Exhibit C attached to the Disclosure show feasible cashflow projections.

6. The Plan is Not Required to Provide for Certain Charter Provisions – Section 1123(a)(6).

Section 1123(a)(6) of the Bankruptcy Code, made applicable by section 1129(a)(1), is not applicable to the Debtors since the Plan does not call for the issuance of any publicly traded securities.

7. The Code's Provisions Regarding the Selection of Officers and Directors Have Been Met - Section 1123(a)(7).

Section 1123(a)(7) of the Bankruptcy Code, made applicable by section 1129(a)(1), requires that the Plan's provision with respect to the manner of selection of any director, officer, or trustee be "consistent with the interests of creditors and equity security holders and with public policy . . ." See 11 U.S.C. § 1123(a)(7). This provision is supplemented by section

1129(a)(5) of the Bankruptcy Code, which directs the scrutiny of the Court to the methods by which management of the reorganized debtor is to be chosen to provide adequate representation of those whose investments are involved in the reorganization — i.e., creditors and equity security holders. See 7 Lawrence P. King et al., Collier on Bankruptcy ¶ 1123.01[7], at 1123-15 (15th ed. rev. 1999).

    B.    <u>The Debtors, As Plan Proponents, Have Complied With Applicable Provisions of the Bankruptcy Code - Section 1129(a)(2).</u>

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of . . . title [11]." See 11 U.S.C. § 1129(a)(2). The legislative history of section 1129(a)(2) explains that this provision embodies the disclosure and solicitation requirements set forth under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

The Debtor has complied with the provisions of Code sections 1125 and 1126 and Federal Rules of the Bankruptcy Procedure 3017 and 3018 regarding disclosure and Plan solicitation. The Debtor's Second Amended Disclosure Statement was conditionally approved as having adequate information under Code section 1125, by Order dated April 14, 2017 subject to final approval.

The Debtor did not solicit the acceptance or rejection of the Plan by any creditor after the Commencement Date and prior to the transmission of the Amended Disclosure Statement Case and Plan solicitation materials. Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code have been met. No creditor or party in interest has alleged otherwise.

    C.    <u>The Plan Has Been Proposed in Good Faith - Section 1129(a)(3).</u>

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." See 11 U.S.C. § 1129(a)(3). In this context, the test for "good faith" is whether "the plan was proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." Matter of Sound Radio, Inc. (Sound Radio I), 93 B.R. 849, 853 (Bankr. D.N.J. 1988), aff'd in part, remanded in part, 103 B.R. 521 (Bankr. D.N.J. 1989)

(Sound Radio II), aff'd mem., 908 F.2d 964 (3d Cir. 1990) (citation omitted). Accord PPI Enterprises, 228 B.R. 339, 347 (Bankr. D. Del. 1998) ("Although the term 'good faith' is not further defined in the [Bankruptcy] Code, in the context of a Chapter 11 plan, courts have held a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code.'") (citation omitted). Such a determination "should be made in view of the 'totality of the circumstances surrounding confection' of the plan." Id. (quoting In re Future Energy Corp., 83 B.R. 470, 486 (Bankr. S.D. Ohio 1988)); Jasik v. Conrad (In re Jasik), 727 F.2d 1379, 1383 (5th Cir. 1984), reh'g denied, 731 F.2d 888 (5th Cir. 1984); CoreStates Bank, N.A. v. United Chem. Techs., Inc. 202 B.R. 33, 57 (E.D. Pa. 1996) (concluding that courts must view good faith by looking at the totality of the circumstances). This Chapter 11 Plan has allowed the Debtor to prevent the business from being liquidated. The Plan provides a distribution to creditors in an amount greater than a Chapter 7 liquidation.

    D.    <u>Any Payments To Be Made By the Debtors for Pre-Effective Date Services Are Subject to the Approval of the Bankruptcy Court - Section 1129(a)(4)</u>

Section 1129(a)(4) requires that payments "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," have either been approved by the Court as reasonable or are subject to approval of the Court as reasonable. See 11 U.S.C. § 1129(a)(4). The focus of section 1129(a)(4) is on disclosure to the Court of any payments for expenses associated with the plan. See 5 Lawrence P. King, Collier on Bankruptcy ¶ 1129.02[4] at 1129-39 (15th ed. 1997).

The Debtor's professionals are required to file appropriate applications for final compensation and reimbursement of expenses for pre-Effective Date services within 60 days after the Effective Date in accordance with the terms of the Plan. Finally, the Plan provides for the Court's retention of jurisdiction to hear and determine, among other things, all applications, including applications for allowances of compensation and reimbursement of expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

    E.    <u>Disclosure Regarding Directors, Officers, and Insiders Has Been Made -Section 1129(a)(5).</u>

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor, that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders, and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtor. See 11 U.S.C. § 1129(a)(5).

In determining whether post-confirmation management of a debtor is consistent with the interests of creditors, equity security holders and public policy, a court must consider proposed management's competence, discretion, experience and affiliation with entities having interests adverse to the debtor. See In re Sherwood Square Assoc., 107 B.R. 872, 878 (Bankr. D. Md. 1989); see also In re W.E. Parks Lumber Co., 19 B.R. 285, 292 (Bankr. W.D. La. 1982) (a court should consider whether "the initial management and board of directors of the reorganized corporation will be sufficiently independent and free from conflicts and the potential of postconfirmation litigation so as to serve all creditors and interested parties on an even and loyal basis"). In general, "[t]he [debtor] should have first choice of its management, unless compelling cause to the contrary exists." Sherwood Square Assoc., 107 B.R. at 878.

Such provisions are consistent with the interests of holders of Claims and Equity Interests and with public policy, and no objection based on Code section 1129(a)(5) has been made in these proceedings.

F. The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission - Section 1129(a)(6).

Section 1129(a)(6) of the Bankruptcy Code requires, with respect to a debtor whose rates are subject to governmental regulation following confirmation, that appropriate governmental approval has been obtained for any rate change provided in the plan, or that such rate change be expressly conditioned on such approval. See 11 U.S.C. § 1129(a)(6). This section is inapplicable here as the Debtor does not have rates subject to governmental regulation.

G. The Plan Is in the Best Interests of the Debtors' Creditors - Section 1129(a)(7).

Section 1129(a)(7) of the Bankruptcy Code, the so-called "best interests" test, requires that any holder of a claim or interest who is impaired by the Plan and who has not accepted the Plan: receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date. 11 U.S.C. § 1129(a)(7)(A)(ii).

The "best interests" test focuses on individual dissenting creditors rather than classes of claims. See Toy & Sports, 37 B.R. at 150. Under the "best interests" test, the "only finding that need be made . . . is that [each non-accepting creditor] will get at least as much under the Plan as [it] would in a liquidation." Sound Radio I, 93 B.R. at 854; see also In re Northeast Dairy Co-op. Fed'n, Inc., 73 B.R. 239, 253 (Bankr. N.D.N.Y. 1987); In re Victory Constr. Co., Inc., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984). See Exhibit G, the Liquidation Analysis, attached to the Disclosure Statement.

    H.    <u>The Plan Comports With Section 1129(a)(8)</u>

Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or interests accept a plan of reorganization. In determining whether the requirement of section 1129(a)(8) has been fulfilled, section 1126 provides a class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan. According to the Ballots filed at this time, <u>Hibu, Inc.</u> has accepted this Plan. The deadline by which objections to the Plan and Disclosure Statement must be filed pursuant to Fed. R. Bankr. P. 3020(b)(1) was May 16, 2017.  There have been no Plan rejections.

    I.    <u>The Plan Provides for Payment in Full of All Allowed Priority Claims -Section 1129(a)(9).</u>

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding Claims entitled to priority under Code section 507(a) receive specified cash payments under the Plan, unless the holder of a particular claim agrees to a different treatment of the Claim.

10

Furthermore, the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code in respect of the treatment of tax claims having priority under Code section 507(a)(8). Pursuant to the Plan, except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, at the option of the Reorganized Debtors, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, (b) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, equal annual Cash payments commencing on the first anniversary of the Effective Date in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest on any outstanding balance from the Effective Date at the applicable rate under nonbankruptcy law, over a period not exceeding five years after the Commencement Date or (c) upon such other terms determined by the Bankruptcy Court; provided, however, that the Reorganized Debtors shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance, in full, at any time on or after the Effective Date, without premium or penalty. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.  There are no such priority tax claims due in this case.

J.     The Plan Has Been Accepted By At Least One Impaired Class - Section 1129(a)(10).

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of a plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider." See 11 U.S.C. § 1129(a)(10). Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied based on the vote by Hibu, Inc..  All impaired classes have accepted the plan.

K.     The Plan Complies With Section 1129(a)(11) .

Section 1129(a)(11) of the Bankruptcy Code requires the Court to find that the Plan is feasible as a condition precedent to confirmation. Specifically, the Court must determine that

11

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. 11 U.S.C. § 1129(a)(11).

The Plan provides for feasible payments over a reasonable period and accordingly, the Plan satisfies the requirements of Code section 1129(a)11).

Resolution of litigation with GeoLogic allows the Debtor to market its products and services. The Statement of Revenue and Expenses for the month ending April 2017 reflects net income of $13,773.49.

L. <u>All Statutory Fees Will Be Paid - Section 1129(a)(12).</u>

Bankruptcy Code section 1129(a)(12) requires the payment of "[a]ll fees payable under [28 U.S.C. Section] 1930." See 11 U.S.C. § 1129(a)(12). Pursuant to the Plan, all such statutory fees required to be paid will be paid on the Effective Date or as soon as practicable thereafter. Thus, the Plan satisfies the requirements of Code section 1129(a)(12).

M. <u>The Plan Provides for the Continuation of Retiree Benefits - Section 1129(a)(13).</u>

Section 1129(a)(13) of the Bankruptcy Code requires that a plan must provide for the continuation after its effective date of payments of all "retiree benefits," as that term is defined in section 1114, at certain required levels, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits. See 11 U.S.C. § 1129(a)(13). This section does not apply to the current matter.

N. <u>Section 1129(a)(14) – (16) Are Inapplicable in These Chapter 11 Cases.</u>

Sections 1129(a)(14)-(15) of the Bankruptcy Code apply only to individual debtors. Section 1129(a)(16) applies only to transfers of property by a corporation or trust that is not a moneyed, business or commercial corporation or trust. Thus, the Plan need not satisfy the requirements of Code sections 1129(a)(14) – (16).

II. **OBJECTIONS TO CONFIRMATION**

No objections to confirmation of the Second Amended Plan have been filed.

III.  **NON-MATERIAL MODIFICATIONS TO THE PLAN**

Modifications to a plan that are "mere clarifications of or technical amendments to the Plan not resulting in a material adverse change in the treatment under the Plan of any of the Debtors' creditors . . . who previously accepted the Plan" do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code. In re Western Asbestos Co., 313 B.R. 456, 472 (Bankr. N.D. Cal. 2004); see also In re Dow Corning Corp., 237 B.R. 374, 378 (Bankr. E.D. Mich. 1999) ("[C]ourts do not require notice of a modification if the modification does not change a claimant's treatment. To . . . require formalistic notice when the modifications are not substantial, would needlessly delay confirmation and heighten the risk of a plan's failure.") (citation omitted). Instead, pursuant to Rule 3019, "such modifications shall be deemed accepted by all of the Debtors' creditors . . . who previously accepted the Plan." Western Asbestos, 313 B.R. at 472.

Here, no modifications have been made.

## Conclusion

Based upon the foregoing, the Debtor respectfully submits that the Plan complies with, and satisfies the requirements of, Bankruptcy Code sections 1122, 1123, 1126, and 1129, and should be confirmed.

> Respectfully Submitted,
> KELLER & ALMASSIAN, PLC
> Attorneys for the Debtor
>
> By:    /s/ A. Todd Almassian
>
> A. Todd Almassian (P55467)
> Keller & Almassian, PLC
> 230 East Fulton Street
> Grand Rapids, Michigan 49503
> 616) 364-2100